W. Edwin Ulmer, In Equity,

*vs.*

Falmouth Loan and Building Association.

Cumberland.   Opinion December 6, 1899.

*Equity.   Practice.   Loan and Building Associations.   Bank Examiner.   Stat. 1897, c. 218; c. 319, § 4.   R. S., c. 47, § 121.*

The power of invoking the interference of the court, when loan and building associations exceed their powers, is invested, under the statutes of this state, in the bank examiner alone, and he only may ask for an injunction and receiver.

A bill in equity will be dismissed when the allegations contained therein are altogether too indefinite and uncertain to apprise the defendants of the particular charges they are called upon to answer.

In Equity.   On Appeal by Plaintiff.

Bill in equity, heard on bill and demurrer, praying for an injunction, a receiver, and the winding up of the affairs of the defendant corporation.   The presiding justice dismissed the bill.

The plaintiff in his bill charged various acts of the officers to be in violation of the by-laws of the corporation, such as follows:—
" That your petitioner is informed and has reason to believe and does believe that the board of directors and officers of said association disregarding the rights of your petitioner and the provisions of said constitution and said laws of said state, and in direct violation thereof, have made a loan of a large sum of money from the funds of said association belonging to your petitioner and the other shareholders of said association, and in which your petitioner is interested as said trustee and attorney for said mortgagors, upon a single parcel of real estate and to an amount far in excess of that provided for in said constitution, and upon property of such a nature that it does not come within the provisions of said by-laws and the laws of said state relative to said loan and building association for the purposes for which said funds of said association may be loaned and of such a nature that the value of same is uncertain."

He also charged illegal reloans at lower rates of lower rates of premium, etc., and "that thereby said monthly payments from said mortgagors to said association as provided in said mortgage deeds and the notes thereto have, in divers cases, been reduced, and to that extent the action of said board of directors and said officers has impaired and still is impairing the revenues of said association, and the returns from thence to your petitioner and other shareholders and mortgagors thereof; that as a result the burden of the mortgagors not so favored by a reduction of payment in said monthly dues on said mortgages is thereby increased and made unequal with the other mortgagors so favored."

The concluding charge in the bill alleged:—" That said action of said board of directors and said officers of said association, as aforesaid, has disintegrated, broken and changed the original basis upon which said association was organized and upon which its business was conducted until said fifteenth day of February, A. D. 1897, and has destroyed the mutual relationship between shareholders and borrowers of said associations, then existing, to such an extent that the said mutual obligations thereof cannot now be fulfilled; that the original purposes of said association cannot now be effected; and that the usefulness of said association for the purposes for which it was organized has been destroyed and can no longer be accomplished."

The defendant demurred to the bill and gave the following reasons for its dismissal:—

"Because it appears by said bill that the facts therein claimed are uncertain and not positively alleged.

"Because all the shareholders in said association have not been notified to join and have not joined and become parties to said bill.

"Because it is not alleged in said bill that complainant made any request to the board of directors and officers of said association for them to give him relief in the premises complained of in his said bill of complaint.

"Because said bill does not contain any matter of equity, whereon this court can ground any decree or give the complainant relief against the defendant corporation.

"And for further cause of demurrer said defendant corporation shows that under the laws of the State of Maine, Fremont E. Timberlake, as bank examiner, is the only person in whose name a bill of complaint praying for the relief prayed for in said bill of complaint, and upon the grounds and for the causes therein mentioned can be prosecuted and maintained."

*W. Edwin Ulmer*, for plaintiff.

*Geo. Libby*, for defendant.

SITTING: EMERY, HASKELL, WISWELL, SAVAGE, FOGLER, JJ.

SAVAGE, J.  Bill in equity by complainant, as shareholder, charging that various acts of the officers of the defendant corporation, which are alleged to be ultra vires, have "disintegrated, broken and changed the original basis upon which said association was organized and upon which its business was conducted, and have destroyed the mutual relationship between the shareholders and borrowers of said association to such an extent that the mutual obligations thereof cannot now be fulfilled; that the original purposes of said association cannot now be effected; and that the usefulness of said association for the purposes for which it was organized has been destroyed and can no longer be accomplished." The bill prays for an injunction, a receiver, and a winding up of the affairs of the Association.

On demurrer, the bill was dismissed by the presiding justice below, and the complainant appealed.

We think the bill was properly dismissed, for, in the first place, the allegations contained therein are altogether too indefinite and uncertain to apprise the defendants of the particular charges they are called upon to answer.

But besides this objection, which goes to the form and structure of the bill, there is another one, which we think is insuperable to the maintenance of such a bill in any form.

Loan and building associations, like savings banks, are creatures of the statutes.  Their manner of organization and method of doing business are specifically prescribed by statute.  They are

placed under the charge, and to a certain extent, under the control of a public official, the bank examiner. Upon him the statutes impose the power and the duty of an examination and investigation, and to him the associations must make stated reports. The bank examiner has the same powers and duties with respect to such associations that he has with respect to savings banks. Laws of 1897, ch. 319, § 4. He is required to visit each institution once in each year, and as much oftener as he deems expedient. At such visits he has free access to the vaults, books and papers, and is required to thoroughly inspect and examine all the affairs of the institution, and make such inquiries as are necessary to ascertain its condition and ability to fulfil all its engagements, and whether it has complied with the law. When required by the bank examiner, the officers of such an association must furnish him with statements and full information relating to matters pertaining to its business affairs and management. Laws of 1897, chap. 218. If, upon examination, the bank examiner is of the opinion that such an association is insolvent, or that its condition is such as to render its further proceedings hazardous to the public or those having funds in its custody, or if he is of the opinion that the institution has exceeded its powers or failed to comply with the rules, restrictions or conditions provided by law, he may apply to one of the justices of the supreme judicial court for an injunction to restrain the institution from proceeding further with its business. After a hearing, such injunction may be dissolved, modified or made perpetual. R. S., chap. 47, § 121.

The foregoing summary of statute provisions makes it apparent that the legislature has intended to throw around institutions of this character all possible safeguards for the protection, not only of those who are financially interested in them, but of the public itself; and it is made the duty of the bank examiner to see that the safeguards established by law are maintained, and that the associations conduct their business according to law. For failure in either respect, he may apply to the court for the proper remedy.

The statute points out the conditions under which the intervention of the court may be obtained, and the officer by whom the

machinery of litigation may be set in motion. It suggests no other way. And it is the opinion of the court that it was the intention of the legislature, as expressed in the statute, that the power of invoking the interference of the court should be vested in the bank examiner alone, and that he only may pray for an injunction and a receiver. It is to be observed that these institutions possess a public character, and it is for the interest of the public, not only that they shall be subjected to judicial investigation when they ought to be, but also that they shall not be so subjected when they ought not to be. Unusual means are placed in the hands of the bank examiner to ascertain their condition, and it cannot be presumed that he will fail to act in a proper case. If one shareholder may maintain a bill, so may every other. There is no limit. To subject loan and building associations to vexatious, harassing and expensive litigation caused by the suits of possibly multitudinous shareholders who may be dissatisfied, with or without reason, would greatly impair their usefulness, if not imperil their existence.

*Bill dismissed with costs.*